IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JESUS TRUILLO,

    Petitioner,

vs.

A. P. KANE, Warden,

    Respondent.

No. C 05-2208 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

### STATEMENT

A jury convicted petitioner of second degree murder (Exh.3 at 1). He was sentenced to sixteen years to life in prison on March 10, 1989 (*ibid.*). This petition challenges a denial of parole on March 15, 2004. The Board denied parole because of the brutal nature of petitioner's offense, the trivial nature of the motive, the lack of specificity as to parole plans, the opposition of the district attorney and police department, the inconsistency of petitioner's explanations of the crimes, and to obtain a new psychological evaluation (Exh. 4 at 45-48).

## DISCUSSION

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

2

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that the Board of Prison Terms violated his due process rights by denying him parole based on the unchanging facts of his offense and ignoring evidence of his rehabilitation and good prison behavior.

**1.     Due Process**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. Respondent contends that petitioner has no liberty interest in parole, so is not entitled to due process, or that if he is so entitled, due process is satisfied by his having been given an opportunity to be heard and an explanation why parole was denied. That is, they contend there is no due process right to a decision which is supported by sufficient evidence, the gravamen of petitioner's claim.

**a.     Liberty Interest**

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S.

3

1   369 (1987). There it held that a similar liberty interest was created even though the parole
2   board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the
3   Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515
4   U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect
5   the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

6   While there is "no constitutional or inherent right of a convicted person to be
7   conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of*
8   *Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it
9   uses mandatory language, may create a presumption that parole release will be granted when or
10  unless certain designated findings are made, and thereby give rise to a constitutionally protected
11  liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole
12  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due
13  process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole
14  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due
15  process liberty interest in release on parole). In such a case, a prisoner has liberty interest in
16  parole that cannot be denied without adequate procedural due process protections. *See Allen*,
17  482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

18  Respondent contends that California law does not create a liberty interest in parole. But
19  California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and
20  *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on
21  parole. In California, the panel or board "shall set a release date unless it determines that the
22  gravity of the current convicted offense or offenses, or the timing and gravity of current or past
23  convicted offense or offenses, is such that consideration of the public safety requires a more
24  lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be
25  fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of
26  *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in
27  release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme
28  requires that parole release be granted unless the statutorily defined determination (that

4

considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty interest in parole. This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument as to liberty interest is without merit.

### b. Sufficiency of the Evidence

Respondent contends that due process does not require that a parole decision be supported by sufficient evidence.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise

5

arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses. In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *Biggs*, 334 F.3d at 916-917. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded that relief for Irons was precluded by *Sass*. *See Irons*, 470 F.3d at 664. The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.* at 665. Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's

6

1 rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in
2 some cases, indefinite detention based solely on an inmate's commitment offense, regardless of
3 the extent of his rehabilitation, will at some point violate due process, given the liberty interest
4 in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).  Even
5 so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging
6 circumstances would amount to a due process violation.

### 2. **Petitioner's Claim**

Petitioner asserts that the Board of Prison Terms violated his due process rights by denying him parole based on the unchanging facts of his offense and ignoring evidence of his rehabilitation and good prison behavior.  Disposing of the second point first, there is no evidence that the Board ignored petitioner's achievements; they were specifically acknowledged in the decision, but found to be outweighed by the factors militating against parole (Exh. 4 at 44-450.  In any case, the only *constitutional* issue is whether the decision is supported by some evidence, not whether the Board gave consideration to positive evidence. *See Hill*, 472 U.S. at 455 (weighing of evidence not required).

The first part of petitioner's claim is that the Board violated due process by basing the denial solely on the unchanging facts of his offense, that is, a *Biggs* claim.  But the predicate for this claim is not true, because the Board did not rely only on the circumstances of the crime.

The denial was based upon petitioner's offense, the trivial nature of the motive, the lack of specificity as to parole plans, the opposition of the district attorney and police department, the inconsistency of petitioner's explanations of the crimes, and to obtain a new psychological evaluation (Exh. 4 at 45-48).  In particular, the Board noted that petitioner had given several different versions of the offense, including one in which he claimed he must have been set-up (*id.* at 46-47).  The Board pointed out that in 1997 and 1999 he claimed to have no memory of the crime, then in 2001 and 2002 claimed to have complete memory of everything that happened, then in 2003 contended he did not remember what happened but thought he was too drunk to kill anyone (*id.*).  The Board ordered a new psychological examination to sort out these accounts and to "update .... your thoughts of the crime (*id.* at 47).  It stated that he needed

7

to develop "insight" into the "cassation factors," which from its placement in the decision clearly was a conclusion triggered by petitioner's inconsistent statements of what happened (*ibid.*).

Given the need for a new psychological report, petitioner's inconsistent statements of what happened, his implied lack of insight into the causes of the crime, and the lack of specificity of his parole plans, there was "some evidence" to support the denial. Petitioner's due process rights were not violated.

Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September  18 , 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8

G:\PRO-SE\WHA\HC.05\TRUJILLO208.RUL.wpd